IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RUFUS ESKEW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 08672 |
| | ) | |
| INTERNATIONAL ASSOCIATION OF | ) | Judge John J. Tharp, Jr. |
| MACHINISTS AND AEROSPACE | ) | |
| WORKERS, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, the defendants' motions to dismiss [12, 15] are granted. The claims in Court I and II are dismissed without prejudice, and the state-law claim in Count III is dismissed with prejudice. This matter is terminated.

## STATEMENT

Plaintiff Rufus Eskew alleges that he was wrongfully terminated from his employment as a Business Representative for the International Association of Machinists and Aerospace Workers District Lodge 8 and the parent organization, the International Association of Machinists and Aerospace Workers ("IAM"). The defendants, who also include the union official who ordered the termination, have moved to dismiss Eskew's claims; for purposes of the motions, the following factual allegations from the complaint are taken as true. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

### I. Facts

District Lodge 8's territory comprises Cook County, Illinois; it is part of the Midwest Territory, whose General Vice President is Defendant Philip J. Gruber. While he was Business Representative, Eskew reported to Carl Gallman, then the Directing Business Representative, who was subsequently replaced by Steve Jones. Jones and Gallman reported directly to Gruber.

Eskew was not just an employee of the union but also a member; he had been a member in good standing of Local Lodge 49 since 1969. Eskew was elected by the rank-and-file members of the local lodges of District Lodge 8 to be their Business Representative in December 2011. Throughout Eskew's tenure as the elected representative, Gruber and his chiefs of staff, Roger Nauyalis and, later, Rod Hoffman, had it in for Eskew. They each told Gallman to "get rid of" Eskew as Business Representative, although there was no "justifiable basis" for terminating Eskew.

Under the terms of the District 8 Lodge Bylaws, Eskew was elected to a four-year term in office at the salary set forth in the IAM Constitution along with a number of fringe benefits. Eskew also had a Dell laptop computer that was provided by District 8 Lodge for union business; Eskew used the computer in his office at District 8 headquarters, which had no lock. When the Dell laptop malfunctioned, Eskew was given a Hewlett Packard ("HP") laptop to use; it came from the Grand Lodge and had been used by others, including the Secretary / Treasurer of District Lodge 8, Larry Walsh.

On December 3, 2012, Eskew was called into a meeting with Steve Jones and Gary Steuessel (the Assistant Directing Business Representative) and fired, effective immediately. Eskew was told that pornography was found on the HP laptop and that Gruber had ordered Eskew's termination. Eskew denied accessing pornography on the laptop, but he was nevertheless fired. Eskew was not given a written charge of misconduct nor any opportunity to defend himself.

The IAM has a constitution that governs its regional districts, local lodges, and its members. The position of Business Representative is created by the IAM constitution. The district lodges, including District Lodge 8, may adopt bylaws that supplement the constitution so long as they do not contradict it. Article L of the IAM constitution governs the misconduct of union officers, representatives, and members. Section 2 provides that misconduct that "shall warrant a reprimand, removal from office" or other penalties consists, in relevant part, of "[i]ncompetence, negligence or insubordination in the performance of official duties; or failure or refusal to perform duties validly assigned." Section 4 of Article L sets forth a procedure for the trial of officers or representatives for misconduct; it requires, to start, a written charge of misconduct. According to the complaint, *see* ¶¶ 55, 63, the District Lodge 8 bylaws also "expressly promised" that as a business representative plaintiff "would not be removed from his employment expect for incompetence, negligence, or insubordination in the performance of official duties, or failure or refusal to perform duties validly assigned," and "would not be removed from his employment except after a written charge." The Bylaws themselves do not contain any such "express" language, but section 3 of Article IX states "All matters arising and not specifically covered in these bylaws will be governed by the IAM Constitution."

## II. Procedural History

About a year after his termination, on December 4, 2013, Eskew sued IAM and District Lodge 8 for wrongfully terminating him in violation of the IAM Constitution and the District Lodge 8 bylaws. Eskew alleges that his termination was wrongful because he committed no misconduct and because he was not given the required due process. Eskew further claims that the defendants violated the Illinois Wage Payment and Collection Act by failing to continue paying him the wages owed to him under his employment agreement. Finally, Eskew claims that defendant Gruber tortiously interfered with Eskew's reasonable expectation of continued employment by accusing Eskew of accessing pornography when Gruber knew that Eskew had not done so, "solely for the purpose of harming" Eskew. Eskew attached to his complaint, and therefore made part of the pleadings, the IAM Constitution and the Bylaws of District Lodge 8.

*See* Fed. R. Civ. P. 10(c); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]hen a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint.").[1]

The defendants—IAM, Gruber, and District Lodge 8—move to dismiss all claims in the complaint. They contend that Eskew failed to exhaust his internal union remedies and is therefore not entitled to sue.[2] They further argue that the claims for violation of the IAM constitution are untimely under what they argue should be a 6-month statute of limitations. They also argue that the complaint fails to state a claim for breach of the District 8 Lodge Bylaws because the bylaws do provide for the contractual rights to which Eskew claims entitlement. They further contend that the IWPC Act claim and the tortious-interference claim are preempted by federal law, namely, § 301 of the Labor Management Relations Act ("LMRA").

In response to the motions, Eskew voluntarily withdraws the IWPC Act claim, which he agrees is preempted. He argues that the rest of the complaint should stand, but he does not address all of the defendant's arguments in favor of dismissal, so the motions are partially unopposed in that respect as well. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (explaining that failing to respond to arguments results in waiver).

### III. Discussion

Counts I and II of the complaint allege that the defendants violated the IAM Constitution and the District Lodge 8 bylaws by terminating Eskew without cause and failing to give him due process, namely, a written charge of misconduct. Eskew does not dispute that the IAM Constitution, which he alleges regulates his employment with the union, sets forth a mandatory grievance and appeal procedure. Article L, section 14 provides that no representative "shall resort to any court of law . . . in connection with any alleged grievance or wrong arising with the IAM or any of its subordinate bodies until such party shall have first exhausted all remedies by appeal or otherwise provided in this Constitution." A union representative's trial and appeal rights are set forth in the remainder of Article L.

---

[1] The defendants have supplied a more complete copy of the IAM constitution, of which plaintiff had attached excerpts.

[2] As a technical matter, failure to exhaust is an affirmative defense based upon facts external to the complaint, and as such, it should not be the basis of a Rule 12(b)(6) motion; "[d]ismissing a case on the basis of an affirmative defense is properly done under Rule 12(c), not Rule 12(b)(6)." *Yassan v. J. P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013). Nevertheless, the plaintiff does not object to the raising of the defense in this manner, he substantively responds by arguing that the failure to exhaust is excused. Therefore, there is no prejudice in addressing the argument.

Typically, the requirement of exhaustion of internal union remedies prevents a worker from suing his union for breaching the duty of fair representation until he or she has exhausted union appeals procedures—as in the seminal cases creating the exhaustion requirement, *Clayton v. UAW*, 451 U.S. 679, 685 (1981), and *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965); *see also, e.g., Hammer v. Int'l Union, United Auto., Aerospace, Agr. Implement Workers of Am.*, 178 F.3d 856 (7th Cir. 1999). In this case, though, the plaintiff's suit is against the union in its capacity as his employer, not his union, and there is no issue of fair representation. Nevertheless, the exhaustion requirement applies.

In *Stevens v. Northwest Indiana Dist. Council*, 20 F.3d 720 (7th Cir. 1994), the plaintiff union members "sought restoration of the old bylaws and voting rights, rescission of the dues increase, an accounting of and damages for the increased dues already collected, and legal fees and costs" against their own union. *Id.* at 723. The district court dismissed the suit in part because "plaintiffs neither filed their initial intra-union complaint in a timely fashion (*i.e.*, thirty days from the accrual of their grievance) nor appealed [the president's] decision to the General Executive Board (something which they likewise had thirty days to do under union grievance procedure)." *Id* at 723-24. The district court determined that it was appropriate to impose a "*Clayton*-like" exhaustion requirement on a purely intra-union dispute. And the Seventh Circuit agreed: "a union member seeking to enforce union contractual promises via § 301 should face an exhaustion requirement with respect to intra-union remedial procedures of at least the stringency envisioned in *Clayton*" because "initial resort to the contractual grievance process would obviate the need for judicial resolution of labor disputes" and because intra-union disputes "activate 'the policy of forestalling judicial interference with internal union affairs.'" *Id* at 732. Applying *Clayton* to intra-union disputes therefore "fosters all the thing though worthy of fostering in this area—private resolution of disputes, responsible union self-regulation, union assistance in the interpretation of its governing document, robust union processes—but retains the flexibility to forgive a failure to pursue unreasonable or illusory intra-union grievance procedures." *Id.*

There is, therefore, an exhaustion requirement applicable to this dispute, and the plaintiff plainly has not met it. Eskew does not plead any facts consistent with exhaustion of the constitution's trial and appeal rights, and in response to the motion to dismiss, effectively admits that he did not avail himself of the grievance and appeal procedure. Instead, he argues that his failure to do so should be excused by IAM's "repudiation" of the constitution. *See Vaca v. Sipes*, 386 U.S. 171, 185 (1967) ("An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures."). But it is clear from Eskew's argument that his idea of "repudiation" is really "breach." *See Bailey v. Bickness Minerals, Inc.*, 819 F.2d 690, 692 (7th Cir 1987) (explaining that a repudiation is a proclamation by one party that it does not consider a contractual provision binding, not simply "a failure to implement the (other side's version of the) substantive provisions of the agreement"). *Vaca,* on which Eskew relies for his repudiation argument makes the same point in explaining that "it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures," and that "repudiation" involves a situation where "the employee-plaintiff has been

4

prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." 386 U.S. at 184-85. Eskew, however, does not claim that he filed a grievance that the union has ignored or that attempted to, but was prevented from, filing a grievance; he simply cites the defendants' failure to comply with the terms of the union constitution and local bylaws in firing him without first issuing a written charge. Mem., Dkt. # 23 at 2 ("The IAM repudiated the grievance procedures by its conduct described in detail at paragraphs 37 through 50 of the Complaint."). But that alleged failure has nothing to do with whether Eskew would have been afforded the opportunity to grieve what he contends was an unjustified firing. Eskew fails to plausibly allege[3] that the defendants said, or otherwise conveyed, that the grievance procedure would not be honored. There are no factual allegations from which it could be inferred that the grievance procedure would have been effectively unavailable or futile.

Eskew was required to, but did not, exhaust his internal union remedies with respect to his claims premised on the IAM constitution and District Lodge 8 bylaws, and the failure is not excused. Therefore, Eskew's breach of contract claims (Counts I and II) must be dismissed. Count III, as already recounted, has been withdrawn. The state-law tortious interference claim against Gruber is the only remaining Count. Ordinarily the Court would simply relinquish its supplemental jurisdiction over the tort claim, but in this case, the defendants have raised a federal preemption argument that would be prudent for this Court to address.

The preemptive force of § 301 of the LMRA, 29 U.S.C. § 185(a), is "so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization,'" and "[a]ny such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23-24 (1983); *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013) ("Section 301 of the LMRA provides a federal rule for contract disputes between employers and labor organizations or between different labor organizations.... The Court has understood this to be a rule that overrides all possible applicable state law, or, in other words, as a rule of complete preemption."). Thus, state-law claims that require "interpretation" of a labor contract or that are "inextricably intertwined with consideration of the terms of the labor contract" fall within the broad preemptive sweep of § 301. *See Crosby*, 725 F.3d at 800.

---

[3] Eskew was not required to anticipate the affirmative defense in his complaint, but he chose to take it on and did not protest that his factual allegations could be supplemented to show that the repudiation exception applies, *i.e.*, that he was prevented from filing a grievance or that a grievance was ignored. Indeed, Eskew could have simply used his response to augment the allegations in his complaint, provided the new facts did not contradict the complaint. *See Help At Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001). But he provides no details regarding any repudiation; instead, he rests on the allegations in his complaint and contends, contrary to established law, that the same facts constituting the alleged breach also amount to outright repudiation.

5

A typical § 301 preemption situation arises when the resolution of a contract or tort claim will require the interpretation of a collective bargaining agreement and would therefore frustrate the federal labor-contract scheme established in § 301. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-210 (1985). A state law claim is preempted by section 301 when it is "substantially dependent" on analysis of a CBA. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987). Preemption also applies when the underlying dispute requires interpretation of a union constitution or governing document, which has been held to be a "labor contract." *United Ass'n of Journeymen v. Local 334*, 452 U.S. 615, 627 (1981) ("We do not need to say that every contract imaginable between labor organizations is within § 301(a). It is enough to hold, as we do now, that union constitutions are."); *Wooddell v. Int'l Bhd. of Elec. Workers*, 502 U.S. 93, 101 (1991) ("[U]nion constitutions are an important form of contract between labor organizations. Members of a collective-bargaining unit are often the beneficiaries of such interunion contracts, and when they are, they likewise may bring suit on these contracts under § 301."); *Wall v. Construction & General Laborers' Union, Local 230*, 224 F.3d 168, 178 (2d. Cir. 2000) (citing cases). Eskew does not argue otherwise; he simply contends that his allegations do not implicate § 301.

Eskew claims that Gruber trumped up the pornography allegations, knowing they were false, and thereby ruined Eskew's continued expectation of employment as a Business Representative.[4] This claim (which, if available, would be governed by Illinois law) requires: "(1) a reasonable expectation of entering into a valid business relationship, (2) the defendant's knowledge of the expectation, (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship, and (4) damage

---

[4] Although his complaint pleads that his employment was governed by a contract, and his wrongful termination claims are premised on contractual rights, Eskew styles Count IV as a claim of tortious interference with an employment "expectancy," which is available to at-will employees under Illinois law (*see Atanus v. American Airlines, Inc.,* 403 Ill. App. 3d 549, 554, 932 N.E.2d 1044, 1048 (Ill. App. Ct. 2010), rather than tortious interference with a contract, which would require him to simply show a valid contract rather than the existence of a reasonable expectancy. *See, e.g., Dopkeen v. Whitaker*, 399 Ill.App.3d 682, 684, 926 N.E.2d 794, 797 (Ill. Ct. App. 2010) (setting forth elements of tortious interference with a contractual relationship, which include "the existence of a valid and enforceable contract between the plaintiff and another"); *Atanus*, 932 N.E.2d at 1048 (setting forth elements of tortious interference with a prospective business expectancy, which include "a reasonable expectation of entering into a valid business relationship").

In his brief opposing the motion to dismiss, Eskew makes clear that he is not premising the tort on interference with contract, but rather the "tortious, malicious, or unjustified intermeddling with the employee's reasonable employment expectancy," which, he says is identical to the tort of tortious interference with prospective business advantage." Mem., Dkt. # 23 at 3, 4. The Court addresses plaintiff's claims on the legal theory he sets forth rather than a contract theory, which would appear to be consistent with his other claims for relief. However, the case for preemption would be even stronger if Eskew were claiming interference with contract, because that contract is the Union constitution and local bylaws.

to the plaintiff resulting from the defendant's interference." *Atanus v. American Airlines, Inc.*, 403 Ill. App. 3d 549, 554, 932 N.E.2d 1044, 1048 (Ill. App. Ct. 2010).

This claim is preempted because whether Eskew had a reasonable expectation of continued employment, as he alleges, is an issue that cannot be determined without reference to the IAM constitution. The constitution governs the circumstances under which union representatives can be removed. In addition, the defendants have a factual defense that implicates the IAM constitution—that Gruber was entitled to fire Eskew for misconduct. "Generally, a corporate officer cannot interfere with the continued employment of an employee of the corporation because the officer acts on behalf of the corporation." *Harrison v. Addington*, 955 N.E.2d 700, 708 (Ill. App. Ct. 2011) (citing *Vickers v. Abbott Laboratories*, 308 Ill. App. 3d 393, 411, 719 N.E.2d 1101 (1999)). The officer's action is tortious only if it resulted from unjustified or malicious interference. *See id*. Whether Gruber was justified in terminating the employment relationship despite Eskew's expectancy, again, cannot be determined without reference to Eskew's and the union's rights as set forth in the IAM constitution. Gruber's alleged "interference" is only tortious if it was unjustified, and that cannot be determined without evaluating his compliance with union rules.

Eskew's sole argument against preemption is a single sentence: "The IAM Constitution need not be interpreted in order to determine whether Gruber committed the tort." Mem., Dkt. # 23, at 4. This conclusory, undeveloped argument fails to acknowledge that the origin of any reasonable expectancy of continued employment is the IAM constitution: both the terms of his position and the conditions under which removal is permitted are prescribed by that document.

The tortious interference claim is preempted by § 301 and therefore must be dismissed along with Eskew's claims of termination in violation of his rights under the IAM constitution and District Lodge 8 bylaws. The dismissal of the latter claims is without prejudice; to the extent that Eskew has any timely claims after exhausting his internal union remedies—if that remains possible—this decision does not foreclose them.[5] In the meantime, this civil matter is terminated.

Date: November 17, 2014

John J. Tharp, Jr.
United States District Judge

---

[5] The defendants' other arguments for dismissal, including timeliness, need not be addressed.